Nancy Ray **CASEROTTI**, Appellant,

v.

**STATE FARM INSURANCE COMPANY**, Appellee.

**No. 05–89–01000–CV.**

Court of Appeals of Texas, Dallas.

May 10, 1990.

Rehearing Denied June 22, 1990.

562

John S. Powell, Friendswood, for appellant.

Dia W. Epstein, Dallas, for appellee.

Before STEWART, ROWE and THOMAS, JJ.

### OPINION

STEWART, Justice.

Nancy Ray Caserotti ("Nancy") appeals from the entry of a summary judgment against her and in favor of appellee, State Farm Insurance Company ("State Farm"). In her sole point of error, Nancy contends that the trial court erred in granting State Farm's motion for summary judgment because there exist genuine issues of material fact which preclude summary judgment as a matter of law. In its sole cross-point, State Farm asserts that the trial court erred in denying its rule 13[1] motion and that Nancy's appeal is frivolous. We affirm the judgment of the trial court.

### FACTS

This cause arose from an automobile accident wherein both vehicles were insured by State Farm. On August 27, 1985, Rhonda Hayes, now Rhonda Hayes Nabors (Rhonda), while operating a vehicle owned by David Ronald Nabors ("David"), failed to observe a stop sign and collided with

---

**1.** TEX.R.CIV.P. 13 (Vernon Supp.1990), hereafter referred to as rule 13.

Nancy's vehicle. Immediately after the collision, Rhonda left the accident scene, went to her place of employment one-half block away, and told David, who was her co-worker, that she had left the stop sign, had failed to see Nancy's vehicle, and had collided with Nancy. David went to the scene of the accident and told police officers that he was driving his vehicle, that he did not see Nancy's vehicle, and that he had hit her; the offense report lists David as the driver of the vehicle and indicates that David was given a citation for failure to yield the right of way.

Nancy and David were referred to the State Farm claims office by their individual insurance agents. Within two days of the accident, Betty Cole, State Farm's senior adjuster, contacted David, who told Cole that he was at fault in the accident; she also contacted Nancy, who stated that David had run the stop sign and hit her. In her deposition Cole testified that she informed Nancy that she would be handling both Nancy and David's claims; Nancy denies this allegation. Cole, after reviewing the accident report, determined that the driver of David's vehicle was at fault in the collision and that State Farm should, pursuant to David's policy, pay for Nancy's medical expenses and property loss. Cole also testified that she contacted Nancy in December 1985 to discuss the status of her claim against David, that Nancy told Cole that she had incurred $85 in medical bills, and that Nancy did not indicate that she would have any future medical expenses as a result of the collision and confirmed that she was ready to settle her claim. Cole further stated that she informed Nancy that State Farm would issue a settlement check in the amount of $100 to end Nancy's claim against David's liability policy. On December 19, 1985, Cole issued a State Farm check to Nancy and John Caserotti ("John"), Nancy's husband, in the amount of $100, which the Caserottis endorsed and negotiated sometime before January 16, 1986. Cole states in her deposition that the $100 settlement check contained State Farm's standard release language, which had been stamped on the reverse side. The $100 check subse-quently was destroyed by State Farm pursuant to its regular business practice, although State Farm produced a photocopy of the check and a copy of the release allegedly stamped on the back of the check. Nancy denies that Cole contacted her in December and that she ever discussed settlement, release, or the $100 check sent by State Farm to Nancy. In his deposition, John admits that he talked to Cole in December 1985, but he denies any discussion concerning release or settlement of Nancy's claims; John alleges that Cole told him that the $100 check was to reimburse them for current medical expenses.

Nancy testified in her deposition that she began to see chiropractors in July 1986 for back and neck therapy due to injuries sustained in the collision with David. Nancy does not contend that State Farm ever refused to pay her medical bills allegedly resulting from the accident with David. In his affidavit, J.D. Royal, a State Farm claims superintendent, states that State Farm issued five checks totalling $2,306 between August 27, 1986 and September 28, 1987 in payment of five medical bills submitted by Nancy and that these were the only bills that Nancy ever submitted. Royal further states that the payments were made under Nancy's personal injury protection coverage to reimburse Nancy for her chiropractors' bills. State Farm contends in its appellate brief that when Nancy tried to collect for these chiropractors' bills under David's liability policy it then reminded Nancy that she previously had settled and released all of her claims against David. We have not found any summary judgment evidence to support State Farm's allegation and, therefore, we do not consider this statement in deciding this appeal.

On April 14, 1987, Nancy sued David for injuries and damages resulting from the accident; neither Nancy nor David notified State Farm of the suit. The trial court entered a default judgment in Nancy's favor. Our record does not reveal when or how State Farm became aware of Nancy's suit against David or at what point State Farm hired a law firm to represent him.

Our record does reveal that the trial court granted David a new trial and that State Farm then hired a law firm to defend David. Steve Johnson, David's attorney, filed an answer on David's behalf which set up the defense of release based on the $100 check sent to Nancy by State Farm. On February 29, 1988, Nancy filed the suit at hand against State Farm, alleging that State Farm had violated the Deceptive Trade Practices–Consumer Protection Act ("DTPA"), Tex.Bus. & Com.Code Ann. § 17.41 *et seq.* (Vernon 1987), breached its fiduciary duty toward Nancy, breached its duty to deal fairly and in good faith with Nancy, violated the Texas Insurance Code, and committed constructive fraud.

In connection with her suit against David, Nancy scheduled the depositions of David and Cole on June 29, 1988. At his deposition, David, for the first time, informed Johnson and State Farm that Rhonda actually was driving his van when it collided with Nancy's vehicle. Johnson, who was representing both State Farm and David, believing that there was a conflict of interest, withdrew as State Farm's attorney. Then, Cole, left without assistance of counsel, declined to give her deposition that day. In his deposition, David said that he told State Farm the story that Rhonda had told him after the accident and that he expected State Farm to pay Nancy's bills since he had admitted fault in the accident.

Nancy's negligence action against David was called for trial, and her breach of duty claims against State Farm were abated pending resolution of the negligence claim against David. State Farm permitted David to waive his release defense and to stipulate as to liability. Shortly before voir dire, the negligence claim against David was settled for $15,000, paid by State Farm, with Nancy reserving her right to pursue her claims against State Farm. After settlement of Nancy's negligence claims against David, Nancy's lawsuit against State Farm resumed, and the trial court subsequently granted State Farm's motion for summary judgment in that cause.

In her general point of error, Nancy contends that the trial court erred in granting State Farm's motion for summary judgment because there are genuine issues of material fact which preclude the entry of summary judgment as a matter of law. In subpoints, Nancy also contends that her claims are not barred by collateral estoppel, accord and satisfaction, or the statute of limitations; that the trial court abused its discretion in failing to grant her motion for continuance in order to complete discovery; that State Farm failed to meet its burden because it failed to address all grounds of recovery on which Nancy sought relief and because part of its proof was incompetent. All of Nancy's asserted claims against State Farm are based on her contention that State Farm breached its duty to her, as its insured, when it sought and obtained her release of all claims under David's policy. Thus, the threshold question is whether State Farm owed a fiduciary duty or a duty of good faith and fair dealing to Nancy, its insured, in handling her third-party claim under its insurance policy issued to David.

## STANDARDS FOR REVIEWING SUMMARY JUDGMENT

The Texas Supreme Court has established the following standards for reviewing a motion for summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Wilcox v. St. Mary's Univ.,* 531 S.W.2d 589, 592–93 (Tex.1975). In a summary judgment case, the question on appeal is not whether the summary judgment

proof raises a fact issue with reference to the essential elements of a cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

## FIDUCIARY DUTY

■ Nancy alleges that State Farm owed her, as its insured, a fiduciary duty in handling her claims against David's State Farm insurance policy. Nancy has not cited, and we have not found, any Texas authority recognizing the existence of a fiduciary relationship between an insured and his or her insurer. A fiduciary duty is a formal, technical relationship of confidence and trust which imposes upon a fiduciary greater duties as a matter of law. *Lovell v. Western Nat'l Life Ins. Co.,* 754 S.W.2d 298, 303 (Tex.App.—Amarillo 1988, writ denied). Proving the necessary confidential (fiduciary) relationship requires more, however, than evidence of prior dealings between the parties, and the subjective trust one party places in another does not establish a confidential relationship. *Consolidated Gas & Equip. Co. v. Thompson,* 405 S.W.2d 333, 336 (Tex.1966); *Thomson v. Norton,* 604 S.W.2d 473, 476 (Tex.App.—Dallas 1980, no writ). Instead, it arises from formal fiduciary relationships such as attorney-client, partnership, trustee-cestui que trust, and from informal social, moral, or personal relationships. *Consolidated Bearing v. First Nat'l Bank,* 720 S.W.2d 647, 649 (Tex.App.—Amarillo 1986, no writ). Proof of a confidential relationship outside the formal cases requires evidence that the dealings between the parties have continued for so long that one party is justified in relying on the other to act in his best interest. *Thomson,* 604 S.W.2d at 476.

Courts strictly apply the above test, emphasizing the distinction between factual proof of a confidential relationship and mere subjective assertions by one party. *Consolidated Bearing,* 720 S.W.2d at 649. In *Winston v. Lake Jackson Bank,* 574 S.W.2d 628 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ), the court concluded that evidence showing the existence of a debtor-creditor relationship between endorsers of a promissory note and the bank for several years did not justify the endorsers' assumption that the bank would act in their interest. *Id.* In *Consolidated Bearing,* 720 S.W.2d at 649, Consolidated argued that the bank owed it a fiduciary duty, because of their relationship, to advise Consolidated that a third party was pledging Consolidated's restricted stock to secure a loan. The court refused to impose a fiduciary duty on the bank and noted that the transaction in dispute in the case was between the bank and another customer; it involved Consolidated only indirectly. That is the case here. Nancy is not suing State Farm as an insured under her own insurance policy. Instead, her complaints concern State Farm's treatment of her as a claimant under David's State Farm policy, a transaction to which she is a stranger. We conclude that, as a matter of law, State Farm did not owe a fiduciary duty to Nancy in handling her claims against David's insurance policy.

## DUTY OF GOOD FAITH AND FAIR DEALING

■ Although Texas courts have not recognized the relationship between an insured and his or her insurer as fiduciary, they have determined that a duty of good faith and fair dealing in the processing and payment of claims arises out of the special relationship between the insured and the insurer. *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 212 (Tex. 1988); *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987). This duty of good faith and fair dealing is imposed on the insurer because of the disparity of bargaining power and the exclusive control that the insurer exercises over the processing of claims. *Aranda,* 748 S.W.2d at 212. It is because of the insurer's superior bargaining power and exclusive control over the evaluation, processing, and denial of claims that a duty is imposed that "[an insurer] is held to that degree of care and diligence which a man

of ordinary care and prudence would exercise in the management of his own business." *Arnold*, 725 S.W.2d at 167. A breach of this duty is compensable in tort damages. *Chitsey v. National Lloyds Ins. Co.*, 738 S.W.2d 641, 643 (Tex.1987); *Arnold*, 725 S.W.2d at 167.

The Texas Supreme Court has applied the following standard of care to an insured's claims that an insurer breached its duty of good faith and fair dealing. A claimant must establish the absence of a reasonable basis for denying or delaying payment of the benefits of the policy *and* that the insurer knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *Aranda*, 748 S.W.2d at 213; *see also Arnold*, 725 S.W.2d at 167. Insurers maintain the right to deny invalid or questionable claims without liability for an erroneous denial of a claim; however, insurers that breach the duty of good faith and fair dealing are subject to liability for their tortious conduct. *Aranda*, 748 S.W.2d at 213.

The present cause is distinguishable from those cases where courts have imposed a duty of good faith and fair dealing upon insurance companies. The cases imposing such a duty all involve first-party claims, *i.e.*, suits by *insureds* pursuant to their *own* insurance policies after their insurer wrongly denied or delayed recovery of the insureds' claims. *See, e.g., Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 130–31 (Tex.1988); *Arnold*, 725 S.W.2d at 166–67; *Aetna Cas. & Surety Co. v. Joseph*, 769 S.W.2d 603, 606 (Tex. App.—Dallas 1989, no writ). Here, Nancy contends that State Farm owed her and David the same duty of good faith and fair dealing because both are "insureds" of State Farm. She asserts that a conflict of interest arose on the part of State Farm when Cole sought to obtain a release from Nancy, because Cole was taking affirmative action to limit and to cut off one of its insured's rights (Nancy's) in an attempt to save State Farm money under the policy of another of its insureds (David's). This argument ignores the distinction between the rights of a third-party claimant and those of a first-party claimant under the present case law. Nancy complains of actions taken by State Farm in connection with her *third-party* claim against David's insurance policy. Nancy does not allege that she was denied benefits under her *own* insurance coverage with State Farm and, therefore, Nancy is not a first-party claimant under the facts of the present case. We have not found any case in which a Texas court has extended an insurer's duty of good faith and fair dealing to provide a remedy to an injured third party.[2] *See Chaffin v. Transamerica Ins. Co.*, 731 S.W.2d 728, 732 (Tex.App.—Houston [14th Dist.] 1987, no writ). We conclude that an insurer does not owe the duty of good faith and fair dealing to its insured who is asserting a third-party claim against another insured of the same company. All of Nancy's claims rest on an alleged breach of either a fiduciary duty or a good faith and fair dealing duty. Because we hold that State Farm did not owe Nancy either duty under our facts, we overrule Nancy's point of error.

## RULE 13 MOTION

In its sole cross-point, State Farm argues that the trial court erred in denying its rule 13 motion and that Nancy's appeal is frivolous. Specifically, State Farm contends that Nancy's suit is groundless, brought in bad faith, and for the purpose of subjecting State Farm to undue burden, expense, and harassment, and that it is without factual or legal basis. In its motion, State Farm sought to recover from Nancy's attorney reasonable expenses in-

---

2. We recognize that the *"Stowers* Doctrine" is an exception to this rule. In *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved), the court allowed a third-party claimant to sue the tortfeasor's insurance company for the portion of a judgment in excess of the policy limits when the insurance company unreasonably failed to settle a claim within the tortfeasor's policy limits. This case is not a *"Stowers"* situation.

curred in connection with defending Nancy's suit against State Farm.

Rule 13 provides in pertinent part:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.

\* \* \* \* \* \*

Courts shall presume that pleadings, motions, and other papers are filed in good faith.... "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law.

Nancy's attorney sought to have the court extend the duty of good faith and fair dealing imposed upon an insurer in relationship to its insured claiming under his own policy to cover its insured when he or she is in the position of a third-party claimant against another insured's policy. We conclude that Nancy's suit was not groundless, but was a "good faith argument for the extension, modification, or reversal of existing law." Tex.R.Civ.P. 13.

State Farm also contends that Nancy's appeal to this Court is frivolous. Rule 84 of the Texas Rules of Appellate Procedure provides in pertinent part:

In civil cases where the court of appeals shall determine that an appellant has taken an appeal for delay and without sufficient cause, then the court may, as part of its judgment, award each prevailing appellee an amount not to exceed ten percent of the amount of damages awarded to such appellee as damages against such appellant.

Before an appellate court may assess damages for delay, it must make two findings: that the appeal was taken for delay and that there was no sufficient cause. *Mid-Continent Cas. Co. v. Whatley,* 742 S.W.2d 475, 479 (Tex.App.—Dallas 1987, no writ). After viewing the record from the point of view of the advocate, we conclude that

Nancy's attorney had reasonable grounds to believe that the trial court's judgment would be reversed. *Id.* State Farm's cross-point is overruled.

We affirm the judgment of the trial court.