Opinion issued April 15, 2021



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00489-CV

———————————

**REEHAN MALIK, Appellant**

**V.**

**GEICO ADVANTAGE INSURANCE COMPANY, INC., TARA CARTHEW, ROBERT M. MILLER, AND TONY NICELY, Appellees**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-62710**

---

## MEMORANDUM OPINION

After an automobile collision, appellant, Reehan Malik, proceeding pro se, brought claims against his automobile insurer, appellee, GEICO Advantage Insurance Company, Inc. ("GEICO"), in connection with its payment of repairs to

Malik's vehicle and settlement of a third-party clam against him. Malik also sued appellees, Tara Carthew, who was a GEICO assistant vice president, Robert M. Miller, who was a GEICO senior vice president, and Tony Nicely, who was GEICO's chief executive officer. Appellees, collectively, moved to dismiss Malik's claims, asserting that he failed to plead any cause of action having a basis in law or fact.[1] The trial court granted appellees' motion and dismissed Malik's claims. In two issues on appeal, Malik contends that the trial court erred in granting appellees' motion to dismiss his claims and erred in denying his motion to compel Carthew and Nicely to answer his interrogatories.

We affirm.

**Background**

On May 9, 2013, Malik, while driving his Toyota Camry on Barker Cypress Road in Houston, changed lanes and collided with an SUV driven by Sura Omar,[2] who was traveling in the lane beside him. At the scene, Malik was issued a citation for making an improper lane change. The collision damaged the right-rear quarter panel, trunk, and rear bumper of Malik's car. He reported the collision to GEICO, who advised him to take his car to a local dealership for a repair estimate. According

---

[1] *See* TEX. R. CIV. P. 91a.

[2] Omar was a named defendant in the trial court, but is not a party to this appeal.

2

to Malik, a GEICO adjuster inspected his car at the dealership and took 19 photographs.

Based on its adjuster's photographs of the points of impact to each vehicle, Malik's statement to GEICO, and the investigating officer's decision to issue Malik a citation, GEICO determined that Malik was at fault for the collision. It is undisputed that GEICO paid in full to repair Malik's vehicle. The initial repair estimate was $2,811.23, of which Malik paid a $1,000.00 deductible. After the repair facility discovered additional damage and submitted supplemental estimates, GEICO paid a total of $6,288.21 to repair Malik's car. Omar also filed a property-damage claim against Malik, which GEICO settled for $5,796.28.

Between the time of the collision, in May 2013, and April 2014, Malik's monthly insurance premiums increased from $430.25 to $1,309.74. In April 2014, his citation was dismissed, and he challenged GEICO's liability decision. After GEICO declined to change its decision, Malik cancelled his coverage. Malik asserts that his new insurer also raised his premiums based on the May 2013 collision.

In September 2018, Malik sued appellees, presenting twenty-four claims. He did not dispute that GEICO paid in full for the repairs to his car and fully settled Omar's claim. He complained, rather, that he did not approve the costs above the initial estimate to repair his car and that GEICO failed to notify him of the settlement with Omar. He complained that GEICO "used these unverified amounts" to

3

unjustifiably increase his premiums. Appellees filed special exceptions, asserting that Malik's petition failed to plead a cognizable claim and failed to attribute his claims to a specific defendant. The trial court granted appellees' special exceptions and ordered Malik to replead.

On March 18, 2019, Malik filed a first amended petition against each appellee. He also propounded interrogatories to Carthew and Nicely. On May 17, 2019, appellees filed a "Rule 91a Motion to Dismiss," in which they asserted that Malik again failed in his first amended petitions to assert a cognizable claim.

On June 11, 2019, Malik filed a second amended petition, in which he presented fifteen claims, discussed below. Generally, he alleged that appellees failed to fulfill their fiduciary and contractual duties, created false estimates and concealed them, "produced false figures through illegal practices," "recorded unverified false amounts in accounts," "facilitated manipulation of sales tax," and provided misleading information to the Texas Department of Insurance ("TDI") and the Better Business Bureau ("BBB"), with the "purpose to enhance their losses then recover from the unaware customers (Malik) through enhanced future premiums."

On June 13, 2019, Malik filed motions to compel Nicely and Carthew to answer his interrogatories. Nicely and Carthew objected on the grounds that Malik had failed to plead a cognizable cause of action, they were not proper parties, and the interrogatories were overly broad, unduly burdensome, and not relevant.

4

On June 14, 2019, appellees filed an "Amended Rule 91a Motion to Dismiss," asserting that Malik's claims, as amended, continued to lack any basis in law or fact. On June 17, 2019, the trial court held a hearing on appellees' motion to dismiss. At the hearing, Malik argued that he did not object to settling Omar's claim against him. Rather, he objected to the "way" in which GEICO had settled the claim, i.e., "how did they [GEICO] make up the $5,700 that they say they paid?" Malik asserted that GEICO "ha[d] not reviewed anything." The trial court asked Malik to state a theory of recovery and how he was damaged by GEICO's decision to pay the repairs. Malik stated that the estimate to repair his car was $1,800.00 and then GEICO "increased the estimate" to $6,288.00 and "added" $5,792.00, for a total of $12,084.00, and then increased his monthly premium from $430.00 to $1,300.00.

GEICO argued that the initial estimate for repairs to Malik's car was $1,800.00 ($2,800.00 with Malik's deductible). However, after the repair shop discovered the full extent of the damage and submitted supplemental estimates, the total for repairs to Malik's car was $6,288.21. And, GEICO paid Omar's third-party claim of $5,796.00. It noted that the loss was on May 9, 2013 and that it notified Malik on May 15, May 22, and May 24, 2013 that it had settled Omar's claim.

After the hearing, the trial court signed an order granting appellees' motion and dismissing Malik's claims with prejudice. It also signed an order denying Malik's motion to compel Nicely and Carthew to answer his interrogatories.

5

**Motion to Dismiss**

In his first issue, Malik argues that the trial court erred in granting appellees' motion to dismiss his claims because appellees failed to timely file their motion or state specifically the reasons why each of his claims was without a basis in law or fact, and he alleged in his petition a legal and factual basis for each of his claims.[3] *See* TEX. R. CIV. P. 91a.1.

*Standard of Review and Legal Principles*

Texas Rule of Civil Procedure 91a authorizes a defendant to move for dismissal of a cause of action that "has no basis in law or fact." TEX. R. CIV. P. 91a.1; *see City of Dall. v. Sanchez*, 494 S.W.3d 722, 724–25 (Tex. 2016). The motion must state that it is made pursuant to Rule 91a, identify each cause of action to which it is addressed, and state specifically the reasons the cause of action has no basis in law, in fact, or both. TEX. R. CIV. P. 91a.2.

A cause of action has no basis in *law* if "the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id*. 91a.1. Courts have concluded that a cause of action has no basis in law

---

[3]    In his brief, Malik asserts numerous sub-points seeking a resolution to the merits of his claims. With exception not applicable here, a trial court, in considering a Rule 91a motion, "may not consider evidence . . . and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." TEX. R. CIV. P. 91a.6. Thus, we confine our review to the trial court's ruling on the motion to dismiss.

under Rule 91a in at least two situations: (1) the petition alleges too few facts to demonstrate a viable, legally cognizable right to relief or (2) the petition alleges additional facts that, if true, bar recovery. *Guillory v. Seaton, LLC*, 470 S.W.3d 237, 240 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("In short, the plaintiff must plead sufficient facts to supply a legal basis for his claim but not so much that he affirmatively negates his right to relief."); *see, e.g.*, *DeVoll v. Demonbreun*, No. 04-14-00116-CV, 2014 WL 7440314, at *3 (Tex. App.—San Antonio Dec. 31, 2014, no. pet.) ("Because [plaintiff] did not allege facts demonstrating reliance or harm, his fraud claim has no basis in law."); *Drake v. Chase Bank*, No. 02-13-00340-CV, 2014 WL 6493411, at *1 (Tex. App.—Fort Worth Nov. 20, 2014, no. pet.) (mem. op.) ("[Plaintiff] pleaded no underlying claim or facts that would support an award of damages for harm to his credit . . . . Thus, [plaintiff's] harm-to-credit claim has no basis in law. . . ."); *Dailey v. Thorpe*, 445 S.W.3d 785, 789 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding that breach-of-fiduciary-duty claim had no basis in law because pleaded facts affirmatively demonstrated that alleged breach occurred after fiduciary relationship ceased).

A cause of action has no basis in *fact* if "no reasonable person could believe the facts pleaded." TEX. R. CIV. P. 91a.1; *see, e.g.*, *Salazar v. HEB Grocery Co., LP*, No. 04-16-00734-CV, 2018 WL 1610942, at *5 (Tex. App.—San Antonio Apr. 4, 2018, pet. denied) (mem. op.) (holding plaintiff's civil-conspiracy claim had no basis

in fact because no reasonable person could believe that grocery stores and retailers conspired together to harm plaintiff); *Drake*, 2014 WL 6493411, at *2 (holding plaintiff's claim for intentional infliction of emotional distress had no basis in fact because "no reasonable person could believe that [defendant] engaged in extreme and outrageous conduct by merely reporting information on [plaintiff's] credit").

Apart from exceptions not applicable here, a trial court "may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59."[4] TEX. R. CIV. P. 91a.6; *see also Dailey*, 445 S.W.3d at 790; *see, e.g.*, *Zawislak v. Moskow*, No. 03-18-00280-CV, 2019 WL 2202209, at *4 (Tex. App.—Austin May 22, 2019, no pet.) (mem. op.) (declining to consider exhibits from third-party discovery and other documents that plaintiff alleged supported fraudulent nature of statements). The trial court may, but is not required to, conduct an oral hearing on the motion. TEX. R. CIV. P. 91a.6. The trial court may award the

---

[4] Rule of Civil Procedure 59 provides, in pertinent part, as follows:

[W]ritten instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings by copies thereof, or the originals, being attached or filed and referred to as such, or by copying the same in the body of the pleading in aid and explanation of the allegations in the petition or answer made in reference to said instruments and shall be deemed a part thereof for all purposes. . . . No other instrument of writing shall be made an exhibit in the pleading.

TEX. R. CIV. P. 59.

8

prevailing party all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. TEX. R. CIV. P. 91a.7.

We review a trial court's decision on a Rule 91a motion de novo. *City of Dall.*, 494 S.W.3d at 724. We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine if the cause of action has a basis in law or fact. *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

*Timeliness*

Malik first argues that the trial court erred in granting appellees' motion to dismiss his claims because appellees failed to timely file their motion in accordance with Rule 91a.

"Rule interpretation, like statutory interpretation, is . . . a question of law over which the trial court has no discretion, and which we review de novo." *Manderscheid v. Laz Parking of Tex., LLC*, 506 S.W.3d 521, 527 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). We interpret rules under traditional principles of statutory construction. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). Generally, "[i]f a rule of procedure is clear, unambiguous, and specific, we construe its language according to its literal meaning." *Manderscheid*, 506 S.W.3d at 527.

Rule 91a provides that a motion to dismiss "must" be "filed within 60 days after the first pleading containing the challenged cause of action is served on the movant." TEX. R. CIV. P. 91a.3. Generally, the ordinary meaning of the term "must" is of mandatory effect. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). However, the Texas Supreme Court has noted that the term "must" is "given a mandatory meaning when followed by a noncompliance penalty." *Id.* Rule 91a does not provide any consequences for not filing the motion within the prescribed period. *See* TEX. R. CIV. P. 91a. "If a provision requires that an act be performed within a certain time without any words restraining the act's performance after that time, the timing provision is usually directory." *Helena Chem.*, 47 S.W.3d at 495. We look to the purpose of the provision for guidance. *Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 404 (Tex. 2009).

This Court and others have held that, although the procedural deadlines in Rule 91a.3 are phrased in terms of "must," these provisions are directory and not mandatory. *See Walker v. Owens*, 492 S.W.3d 787, 790–91 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (considering analogous deadline for trial court's ruling in 91a.3); *Koenig v. Blaylock*, 497 S.W.3d 595, 598–99 (Tex. App.—Austin 2016, pet. denied) (same); *see also MedFin Manager, LLC v. Stone*, 613 S.W.3d 624, 628 (Tex. App.—San Antonio 2020, no pet.); *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *7 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem.

10

op.) ("Although the procedural deadlines in Rule 91a are phrased in terms of 'must,' these provisions are directory and not mandatory."). Thus, any noncompliance with the timing of the motion will not result in reversal if such error is harmless. *See* TEX. R. APP. P. 44.1(a); *Walker*, 492 S.W.3d at 791.

Here, Malik filed his original petition on September 12, 2018. Although the record does not reflect when he served appellees with his petition, the parties do not dispute that he served it in September 2018. *See* TEX. R. CIV. P. 91a.3. Appellees filed their answer in November 2018.

In his original petition, Malik presented twenty-four claims against appellees collectively.[5] Appellees filed special exceptions, asserting that Malik's claims did not constitute cognizable claims. The trial court granted the special exceptions, ordering Malik to replead within fourteen days to avoid dismissal. On March 18,

---

[5]    Malik's claims included the following, among others:
- Fabrication of Parallel Repair Records
- Abuse and Misuse of the Law
- Unfair Enhancement of "Loss" at the Cost of Plaintiff
- Fabrication of Estimate with Unverified and Fictitious Information
- Active Concealment of Unverified Fabricated Estimate/Information
- Violation of Contract
- Reckless Disregard of Cost Reasonability
- Reverse Fraud by Exaggerating Insurance "Unpaid Loss"
- Failure of Accounting System: Concealment of Recovered Loss
- Transparency of "Unpaid Loss" and Benefit to the Defendant
- Defendant's Actions to Inflate the Loss
- Arrogated Powers Applied Illegally

2019, Malik filed a first amended petition against each appellee. In his petitions, he presented various iterations of the same claims against each appellee.

On May 17, 2019, appellees filed an original "Rule 91a Motion to Dismiss." On June 11, 2019, Malik filed his live, i.e., second amended petition, in which he presented the following claims:

1. Breach of Fiduciary Duty and Violation of [DTPA]
2. Breach of Fiduciary Duty by GEICO and Others – Conspiracy
3. Violated [DTPA] & Breached Fiduciary Duty – Added Unnecessary Amounts to Raise Repair Costs
4. Violated [DTPA] & Breached Fiduciary Duty – Unverified and Fictitious Amounts Added to Raise "Unpaid Loss"
5. Violated [DTPA] & Breach of Contract by GEICO and Others – Payment on Plaintiff's Behalf
6. Violated the Laws of Defamation – Lied to the State of Texas
7. Unlawful Unconscionable Acts Violated [DTPA] & Breach of Contract, Breach of Fiduciary Duty
8. GEICO and Others Profiled & Conspired Against the Plaintiffacy [sic]
9. Violated [DTPA] by Reverse Insurance Fraud
10. Breach of Contract, Fiduciary Duties and Breach of Trust
11. Violated [DTPA] – Failure to Train and Educate their Employees in 75 Years
12. Violated [DTPA] Failure to State Tax Responsibility
13. Violated [DTPA] – Circumstantial Abuse
14. Defendant Failed to Stop the Deceptive and Unlawful Practices
15. Violated [DTPA] – Deceptive Advertising

On June 14, 2019, appellees filed an "Amended Rule 91a Motion to Dismiss," addressing Malik's amended claims. On June 17, 2019, the trial court held a hearing and signed an order granting the motion, dismissing Malik's claims with prejudice.

Malik does not direct us to any place in the record in which he objected that appellees' original motion to dismiss was not timely filed. *See* TEX. R. CIV. P. 33.1; *see, e.g.*, *Thomas v. Logic Underwriters, Inc.*, No. 02-16-00376-CV, 2017 WL 5494386, at *5 (Tex. App.—Fort Worth Nov. 16, 2017, pet. denied) (mem. op.) (holding plaintiff failed to preserve complaint regarding compliance with timing provisions of Rule 91a.3). Thus, Malik's complaint is not preserved. Accordingly, we overrule this portion of Malik's first issue and turn to the merits of appellees' "Amended Rule 91a Motion to Dismiss" Malik's claims.

### Causes of Action

As noted above, Malik, in his live pleading, presented various claims against appellees for: (1) breach of fiduciary duty, (2) violations of the Texas Deceptive Trade Practices Act ("DTPA"), (3) breach of contract, (4) defamation, and (5) civil conspiracy. Appellees moved to dismiss each of these claims as legally and factually baseless and specifically stated in their motion the reasons that Malik's causes of action lacked any basis in law or fact. *See* TEX. R. CIV. P. 91a.2.

1.    *Breach of fiduciary duty*

To state a cause of action against appellees for breach of fiduciary duty, Malik was required to allege that (1) a fiduciary relationship existed between appellees and Malik; (2) appellees breached their fiduciary duties; and (3) either that Malik was injured by the breach or that appellees benefited from their breach.  *See Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

In each of his breach-of-fiduciary-duty claims, Malik alleges, in pertinent part, as follows, or similarly, that:

> A fiduciary relationship existed between GEICO and [Malik].  GEICO and other Defendants [were] in a position of trust and confidence as the Chairman, CEO, Vice President and Assistant Vice President of GEICO.  The Defendants held such high and important positions, that [Malik] reposed full confidence and trusted in them, relied on [appellees] to make decisions in the best interest of [Malik] and expected good faith dealings transparency and care, especially when [Malik] had been a paying customer with excellent record. GEICO and other [appellees] therefore owed fiduciary duties to [Malik], including but not limited to the duties of highest standards of good faith.
>
> [Appellees] severally and jointly breached their fiduciary duties to [Malik] by misusing company positions. They misused their positions of trust and confidence to wrongfully prepare secondary estimate, and increased the repair cost by hundreds of percent, without knowledge of [Malik] and then concealed it from [Malik] for years . . . .
> . . . .
> . . . . [Appellees] declared [him] liable for [the] accident without investigation contradiciting [sic] the court's decision, created false estimates without seeing the vehicle or without taking any new pictures and then never informed [him], concealed the estimates from [Malik], paid money on behalf of [Malik] without providing any details which are concealed/sealed till today.

14

Thus, Malik's breach-of-fiduciary-duty claims rely on the existence of a fiduciary relationship between an insurer and its insured. *See id*. Appellees alleged in their motion that no such duty exists.

"It is well settled that not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (internal quotations omitted). When the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court. *Id*. In certain formal relationships, such as an attorney-client or trustee relationship, a fiduciary duty arises as a matter of law. *Id*. An informal fiduciary duty may arise from "a moral, social, domestic or purely personal relationship of trust and confidence." *Id*. (internal quotations omitted). "To impose an informal fiduciary relationship in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Id*. (internal quotations omitted). Subjective trust by one party in another does not establish the requisite relationship. *Caserotti v. State Farm Ins. Co*., 791 S.W.2d 561, 565 (Tex. App.—Dallas 1990, writ denied).

Texas courts, including this Court, have held that "[t]here is no general fiduciary duty between an insurer and its insured." *Wayne Duddlesten, Inc. v. Highland Ins. Co*., 110 S.W.3d 85, 96 (Tex. App.—Houston [1st Dist.] 2003, pet.

15

denied); *see also Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 678 (Tex. App.—Fort Worth 2010, no pet.) ("An insurer does not generally have a fiduciary duty toward its insured."); *Caserotti*, 791 S.W.2d at 565 ("[Insured] has not cited, and we have not found, any Texas authority recognizing the existence of a fiduciary relationship between an insured and his or her [automobile] insurer.").

Here, Malik does not direct us to any Texas case in which a court has found a fiduciary relationship between an insured and its insurer. In addition, he does not allege that a special relationship of trust and confidence existed between the parties prior to, and apart from, the policy at issue. *See Wayne Duddlesten*, 110 S.W.3d at 96 (holding that plaintiff did not allege facts, even after being allowed time to replead, demonstrating that informal, confidential relationship existed between parties that was formed prior to and apart from insurance contracts); *Rice*, 324 S.W.3d at 679. Thus, there is no basis in law to support Malik's claims against appellees for breach of a fiduciary duty. *See Guillory*, 470 S.W.3d at 240 (holding cause of action has no basis in law under Rule 91a if petition alleges too few facts to demonstrate viable, legally cognizable right to relief).

Accordingly, we hold that the trial court did not err in granting appellees' motion to dismiss Malik's breach-of-fiduciary-duty claims. *See* TEX. R. CIV. P. 91a.1.

16

2. *Violations of the DTPA*

Pursuant to the DTPA, a consumer may maintain an action if any of the following constitute a producing cause of economic damages or damages for mental anguish:

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:

    (A) specifically enumerated in [Business and Commerce Code section 17.46(b)]; and

    (B) relied on by a consumer to the consumer's detriment;

(2) breach of an express or implied warranty;

(3) any unconscionable action or course of action by any person; or

(4) the use or employment by any person of an act or practice in violation of [Texas Insurance Code chapter 541].

*See* TEX. BUS. & COM. CODE § 17.50. Section 17.46(b) contains a "laundry list" of prohibited acts. *Id.* § 17.46(b). An "[u]nconscionable action or course of action" is an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree. *Id.* § 17.45. Insurance Code Chapter 541 prohibits, inter alia, unfair or deceptive acts or practices in conducting the business of insurance. TEX. INS. CODE § 541.003. Deceptive acts or practices include, inter alia, misrepresenting the terms or benefits of a policy, false advertising, failing to attempt in good faith to settle claims, delaying settlement, and refusing to pay a claim without conducting a reasonable investigation. *See id.* §§ 541.052, .060.

17

In his petition, Malik alleges that, after the initial estimate to repair his car, appellees "wrongfully prepare[d] [a] secondary estimate," "increased the repair cost by hundreds of percent," "add[ed] excessive and unneeded amounts to increase the repair cost and then entered false amounts to raise their 'unpaid loss' for their benefit, which has risen to over $104 billion." He alleges that they did so without his knowledge and then "concealed it from [him] for years' and without the authorizations, declared unlawful by Sec. 17. of the DECEPTIVE TRADE PRACTICES."

"Generally, to prevail on a misrepresentation claim under the Insurance Code or the DTPA, an insurance policyholder must identify a specific misrepresentation upon which he relied." *Zatorski v. USAA Tex. Lloyd's Co.*, No. 01-13-01002-CV, 2015 WL 456474, at *2 (Tex. App.—Houston [1st Dist.] Feb. 3, 2015, no pet.) (mem. op.). He must also show that he relied on the act or practice to his detriment and that such act or practice was a producing cause of his damages. *See* TEX. INS. CODE § 541.151.; *Cruz v. Andrews Restoration, Inc*., 364 S.W.3d 817, 823 (Tex. 2012). Here, Malik does not identify a specific misrepresentation made by appellees *to him*, upon which he relied to his detriment. Because Malik's petition alleges too few facts to demonstrate a viable, legally cognizable right to relief, these claims are without a basis in law. *See* TEX. R. CIV. P. 91a.1; *Guillory*, 470 S.W.3d at 240.

Malik also alleges that appellees engaged in an "unconscionable act and increased the overall loss to [him] to over 84% of the cost of the vehicle, for such a small accident in a reckless disregard of cost reasonability." He alleges that appellees unconscionably overpaid his claim as part of a scheme to raise his premiums. We conclude that Malik's claim is without a factual basis because no reasonable person could believe that an insurer would overpay a claim in order to secure higher future premiums from an insured who could, as did Malik, simply cancel the policy and go elsewhere. *See* TEX. R. CIV. P. 91a.1 (stating cause of action has no basis in fact if "no reasonable person could believe the facts pleaded"); *see, e.g.*, *Salazar*, 2018 WL 1610942, at *5 (holding that plaintiff's claim had no basis in fact because no reasonable person could believe that grocery stores and retailers conspired together to harm him).

Malik further alleges that GEICO engaged in deceptive advertising. *See* TEX. BUS. & COM. CODE § 17.12. Section 17.12 prohibits, as pertinent here, a person from disseminating a statement that he knows materially misrepresents the cost of a service for the purpose of inducing a person to contract for that service. *See id.* Malik alleges that GEICO's advertising slogan that "15 minutes may save you 15%" on auto insurance is false and misleading because he "lost 100% peace of mind." Nothing in GEICO's slogan promises or guarantees that its rates will be lower than

19

those of another insurer. Again, Malik's claim is without a factual basis. *See* TEX. R. CIV. P. 91a.1; *Salazar*, 2018 WL 1610942, at *5.

Accordingly, we hold that the trial court did not err in dismissing Malik's DTPA claims.

3. *Breach of contract*

To establish a breach of contract, a plaintiff must show (1) the existence of a valid contract between the plaintiff and the defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage as a result of the breach. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

In his petition, Malik alleges that appellees breached the insurance contract by assigning liability to him without conducting an investigation and by failing to notify him of the settlement with third-party claimant, Omar. He also alleges in his petition, however, that he gave a statement to GEICO after the collision, that a GEICO adjuster inspected his car at the repair facility, and that the adjuster took "19 photos" of the damage. And, he alleges that appellees "bombarded" him with letters on May 22 and May 24, 2013 notifying him of the settlement with Omar. Thus, Malik's petition alleges additional facts that, if true, bar his recovery. *See Guillory*, 470 S.W.3d at 240 ("In short, the plaintiff must plead sufficient facts to supply a legal basis for his claim but not so much that he affirmatively negates his right to

20

relief."); *Dailey*, 445 S.W.3d at 789. Because Malik's claims are without a legal basis, we hold that the trial court did not err in dismissing Malik's breach-of-contract claims. *See* TEX. R. CIV. P. 91a.1.

4.    *Defamation*

A defamation action requires (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).

Malik alleged in his petition that he filed complaints with TDI and the BBB about the matters at issue in this appeal and that appellees, in response, "reported wrong information to the State of Texas and tried to spread negative words about [him] while hiding the correct picture from the State, for their benefit and violated the laws of defamation." He asserted that appellees notified him, by letter dated August 19, 2016, that GEICO settled the third-party claim with Omar for $5,796.28. However, appellees "misled" TDI by reporting that GEICO paid $4,857.40 to settle the third-party claim. Malik does not identify any statement that is defamatory to him. *See id.* Because his petition alleges too few facts to demonstrate a viable, legally cognizable right to relief, these claims are without a basis in law. *See* TEX. R. CIV. P. 91a.1; *Guillory*, 470 S.W.3d at 240. Accordingly, we hold that the trial court did not err in granting appellees' motion to dismiss Malik's defamation claim.

21

5.    *Civil conspiracy*

Malik alleged that appellees

> misused their positions of trust and confidence and profiled [him] and conspired against [him]. [Appellees] declared [him] liable for accident without investigation contradiciting [sic] the court's decision, created false estimates without seeing the vehicle or without taking any new pictures and then never informed the [him], concealed the estimates from [him], paid money on behalf of [him] without providing any details which are concealed/sealed till today. This fits in well with the overall picture of their profiling and conspired against [him].

The elements of civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). "Civil conspiracy is a derivative action premised on an underlying tort." *Gary E. Patterson & Assocs., P.C. v. Holub*, 264 S.W.3d 180, 204 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (internal quotation omitted). There is no independent liability for civil conspiracy, and a plaintiff has no viable conspiracy claim without an underlying tort. *Spencer & Assocs., P.C. v. Harper*, 612 S.W.3d 338, 354 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Having concluded above that Malik has not demonstrated a legal or factual basis for an underlying tort, we hold that the trial court did not err in dismissing Malik's conspiracy claim. *See* TEX. R. CIV. P. 91a.1.

22

Malik's remaining claims, for "profiling," "reverse insurance fraud," "failure to train and educate employees for 75 years," and "failure in state sales tax responsibility," have no cognizable basis in law. *See id.*

We hold that the trial court did not err in granting appellees' motion to dismiss each of Malik's claims. *See id.* Accordingly, we overrule Malik's first issue.

## Motion to Compel

In his second issue, Malik argues that the trial court erred in denying his motion to compel Nicely and Carthew to answer his interrogatories because they "failed to specifically show that the interrogatories [were] not relevant" and "failed to demonstrate with[] any specifics that the discovery [was] burdensome."

We review a trial court's ruling on a motion to compel discovery for an abuse of discretion. *Austin v. Countrywide Homes Loans*, 261 S.W.3d 68, 75 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). Generally, the scope of discovery is within the trial court's discretion; however, the trial court must impose reasonable discovery limits. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). A party may obtain discovery "regarding any matter that is not privileged and is relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a). Discovery requests must reflect a reasonable expectation of obtaining information aiding the resolution of the dispute and must be reasonably tailored to include only relevant matters. *In re CSX Corp.*, 124 S.W.3d at 152.

23

The record shows that Malik sought to compel answers from Nicely and Carthew to 25 interrogatories, including:

- Identif[y] the person who did this investigation with all the relevant detail and photographs concerning this occurrence . . . , please state if you are satisfied with that investigation . . . .

- State the procedure and all actions taken by you and senior management to verify the accuracy, completeness and integrity of the investigation . . . .

- Please state the total bonus paid for the years 2013-2018 . . . and state how and on what basis employee bonus is awarded and other incentives given at GEICO.

- Please explain if you have any fiduciary duty to GEICO customers . . . .

- Please state if it is illegal to change lanes according to law while driving . . . .

- What is your role in calculating, transmitting and recovery of "unpaid loss" of GEICO in your jurisdiction . . . .

- Identify the expenses, charges and "unpaid loss" which are due to be recovered and state the amount which has been recovered for the years 2013-2018 . . . .

- Give the total number of accidents in your jurisdiction and state the estimates of cost and financial detail of all the accidents during the periods March-June 2013 and for the year 2018 . . . .

- Indicate the categories of people from whom the sales tax is recovered by GEICO and other companies/businesses under the law.

- State the total amount of sales tax collected in your jurisdiction . . . .

- State the corporate criteria or philosophy used for developing repair estimates . . . .

- State the total yearly repair cost/expense (excluding deductible) for all the vehicles in Texas in the last five years. . . .

- What is GEICO's contract/arrangement with Don McGill Toyota or other repair facilities as well as with regarding repairs?

Appellees objected on the ground that these requests sought irrelevant information and were overly broad and burdensome.

In determining appellees' motion to dismiss Malik's claims, i.e., whether Malik's causes of action had any basis in law or fact, the trial court could not consider evidence and could consider only his pleading, together with any pleading exhibits permitted by Rule 59. *See* TEX. R. CIV. P. 91a.6; *see also id*. 59. Thus, answers to these interrogatories were unnecessary to the resolution of appellees' motion to dismiss Malik's claims. *See In re Butt*, 495 S.W.3d 455, 463 (Tex. App.—Corpus Christi 2016, orig. proceeding) (holding Rule 91a motion to dismiss is "intended to be asserted and determined soon after the filing of the case and before the opportunity for thorough discovery"). Here, the trial court signed its order dismissing Malik's claims on the same day that it signed the order denying Malik's motion to compel. We hold that the trial court, having dismissed Malik's claims, did not abuse its discretion in also denying Malik's motion to compel answers to his interrogatories.

Accordingly, we overrule Malik's second issue.

25

## Conclusion

We affirm the trial court's judgment.



                                        Sherry Radack
                                          Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.